(No. 7078.  May 22, 1943.)

AMERICAN MUTUAL BUILDING AND LOAN COMPANY, a corporation, Appellant, v. F. CLARK KESLER and NETTIE W. KESLER, his wife, Respondents.

[137 Pac. (2d) 960.]

Rehearing Denied June 15, 1943.

E. H. Casterlin for appellant.

L. H. Thomas and John W. Jones for respondents.

AILSHIE, J.—September 4, 1928, Nettie W. Kesler and F. Clark Kesler, her husband, then residents of Utah, executed and delivered to the Mutual Savings and Loan Association their promissory note for $1500 and secured the same by a mortgage on Utah real estate belonging to Mrs. Kesler. Thereafter, and on April 14, 1937, the Mutual Savings and Loan Association sold and assigned the note

and mortgage to appellant, a Utah corporation. The Keslers paid their regular monthly instalments until June 1, 1932, which was the last payment they made, at that time leaving a balance of 81 unmatured instalments. The Keslers also failed to pay taxes, assessments, insurance, and other incidental expenses, which were covered and secured by the mortgage. Respondents breached the terms and conditions of the mortgage by failing to pay further instalments, taxes, assessments, insurance premiums, and incidental expenses. October 21, 1935, appellants brought action in the Utah court for foreclosure of the mortgage and, at the same time, elected to declare the entire indebtedness due, under the provisions of an acceleration clause contained in the mortgage. Decree of foreclosure was entered in the Utah court, on constructive service, December 9, 1935; and foreclosure sale was made January 6, 1936, from which purchase price of $1500 was realized.

■ Long prior to the institution of the foreclosure action, the Keslers moved to Idaho. The present action for a personal judgment against Keslers for balance due was instituted July 20, 1940, and resulted in a judgment in favor of the appellants against the respondents, for the sum of $180.58, principal, interest, and costs. This appeal is taken by the plaintiff upon the judgment roll alone (Sec. 7-1107, I.C.A.) and does not furnish us with any of the evidence introduced in the case. We must, therefore, decide the case upon the assumption, that the evidence supports the findings made by the trial court. (*Needham v. Brown,* 34 Ida. 193, 198, 200 P. 346; *McCornick v. Brown,* 22 Ida. 52, 60, 125 P. 197; *Reid v. Keator,* 55 Ida. 172, 176, 39 P. (2d) 926; *Morton v. Fuller,* 48 Ida. 203, 205, 281 P. 377.)

The findings of the trial court and conclusions, material for our consideration here, are as follows:

"6. That the makers of said note have paid on account thereof a total sum of *$856.45,* without directions or restrictions respecting the application thereof, which said total sum was applied as follows, to-wit: to principal $279.21, to interest *$577.24.* That the legal rate of interest in the State of Utah on the date of said note could not exceed 12% per annum or its equivalent of 1% per month.

"7. That the last payment on said note was made by the defendants on June 1, 1932, and that these payments were so made at such times and in such manner that after

the application of the last payment there was a balance due on said note for principal in the sum of *$1,220.79.*

"8. That the defendants Kesler breached the terms and conditions of said mortgage by failing to pay general taxes, special assessments and insurance premiums, at the time and in the manner provided by said mortgage, and the same were paid by this plaintiff. That by the terms of said mortgage the repayment of those items to the plaintiff was secured by the said mortgage and the amount of said items became a lien on the mortgaged property and a part of the mortgage debt.

"9. That by reason of the default in the payment of said note according to its terms and conditions, and the breach of said mortgage, the plaintiff brought an action to foreclose the said mortgage, on *October 21, 1935,* in the District Court of Beaver County, Utah.

"10. That on October 21, 1935, the collection of none of the installments of said note was barred by the six year statute of the State of Utah.

"11. That long prior to October 21, 1935, the defendants Kesler who were named as parties defendant in the foreclosure action in Utah, had removed from the State of Utah to Bingham County, Idaho, where said defendants have since continuously maintained their residence.

"12. That the summons issued out of the court having jurisdiction of the foreclosure action was duly and regularly served on these defendants Kesler in Bingham County, Idaho, and that neither of the defendants Kesler appeared in the foreclosure action and their default was duly and regularly entered therein for failure to appear and plead, on December 4, 1935.

"13. That on December 9, 1935, a decree was duly and regularly entered in the foreclosure action by the terms of which the said mortgage was foreclosed and the property therein described was ordered sold to satisfy the various amounts found by the court to be due the plaintiff and secured by the said mortgage.

"14. That the various amounts found to be due and secured are: Principal and interest, $1,733.52; Special Assessments, $36.28; General Taxes, $492.53; Insurance Premiums, $59.52; Abstract of Title, $8.25; Attorneys' Fees, $250.00; Costs and Disbursements, $21.00, all as of *December 9th, 1935.* That the total amount of the items recovered under the terms of the mortgage only is $867.58.

That the grand total of all amounts secured by the mortgage is $2,601.10.

"15. That on *January 6th, 1936,* the mortgaged property was duly and regularly sold for the gross sum of $1,500.00. That after deducting the costs of the foreclosure sale in the sum of $22.50 there remained the sum of $1,477.50 to be applied to the satisfaction of the various secured items.

"16. That the instant action was commenced on July 20, 1940, to recover the balance due from the defendants after the application of the sum of $1,477.50 to the satisfaction of the various amounts above stated.

"17. That on October 21, 1935, the date of the commencement of the foreclosure action, the plaintiff elected to accelerate the maturity of all of the installments of the said note not then due.

"18. That on July 20, 1935, five years before the filing of the instant action, the first 81 installments of the said note, aggregating a principal in the sum of $799.07 had matured, and that the remaining 39 installments, aggregating a principal sum of $700.93, remained unpaid.

"19. That on January 6, 1936, the interest on said sum of $700.93, at 12% per annum from July 20, 1935, amounted to $38.55, which when added to the sum of $700.93 makes a total of $739.48.

"20. That after the sum of $1,477.50 is applied to the payment of the sum of $867.58, the total amount of principal and interest of the items recoverable under the terms of the mortgage alone, there remains the sum of $609.92 to be otherwise applied.

"21. That when this sum of $609.92 is applied to the satisfaction of the sum of $739.48, mentioned in paragraph 19 above, there remains a balance of $129.56 as of January 6, 1936.

"As Conclusions of Law from the foregoing facts, the court finds and decides:

. . . .

"2. That on July 20, 1940, when this action was commenced, all money due on said note from the defendants Kesler, excepting the principal sum of $700.93 mentioned in Finding No. 18, and the interest thereon as of January 6, 1936, mentioned in Finding No. 19, was barred by the Idaho Statutes of Limitations.

"3. That the defendants Kesler are entitled to have

applied to the said sum of $700.93 and interest in the sum of $38.55, as of January 6, 1936, the sum of $609.92 found in Finding No. 20 to be the net proceeds from the sale of the mortgaged property, leaving a balance as of January 6, 1936, in the sum of $129.56."

■ Sec. 9-101, I. C. A., declaring that "There can be but one action for the recovery of any debt, . . . secured by mortgage", has no application to a case like this, where the real property given as security is located in another state. (*Canadian Birkbeck Investment, etc., Co. v. Williamson,* 32 Ida. 624; *Lepper v. Jackson,* 57 P. (2d) 768.)

■ No appearance was made by respondents in the Utah foreclosure case and no action was taken by that court in reference to the application of the funds received from the foreclosure sale to the payment of any specific installment or item of indebtedness secured by the mortgage. In re application of payments, see: *Shull v. Lawrence,* 32 Ida. 527, 533, 186 P. 246; *Smith v. Thomas,* 42 Ida. 375, 379, 245 P. 399. It was therefore within the power and jurisdiction of the Idaho court, upon consideration of this action, for a personal judgment for balance due, to apply the foreclosure receipts as equity dictates: *Massachusetts Mut. Life Ins. Co. v. Paust,* 2 N. W. (2d) 410, 139 A. L. R. 473; *Estes v. Fry,* (Mo.) 65 S. W. 741, 745; *Bank of America Natl. Trust & Sav. Assn. v. Kelsey,* (Cal. App.) 44 P. (2d) 617, 620; *Security Trust & Sav. Bank v. June,* (Ariz.) 1 P. (2d) 970, 971) and to consider and determine just what, if any, installments that had matured, *prior to commencement of foreclosure* proceedings, were barred by the Idaho statute. But the court had no power or authority to defer maturity of installments *already matured* by election under the acceleration clause of the contract. (*Canadian Birkbeck Investment & Sav. Co. v. Williamson,* 32 Ida. 624, 631, 186 P. 916.) The application of receipts from the foreclosure sale of mortgaged securities does not toll the statute of limitations. (*Howard v. Pritchett,* 207 Ala. 415, 92 So. 782, 25 A. L. R. 55, and annotations.)

■ Reading and construing Finding No. 18 and Conclusion No. 2 together, we conclude that the trial court was of the opinion that the bar of the statute of limitations against "the first 81 installments" began to run on or prior to July 20, 1935; and that the statute did not begin to run against "the remaining 39 installments" until later dates, as each matured under the original installment con-

tract. Such was an erroneous conclusion, for the following reasons:

October 21, 1935, appellant availed itself of the benefits of the acceleration clause contained in the contract and "elected to accelerate the maturity on all the installments of the said note not then due." That election matured all installments of the contract sued upon for all purposes, not only in Utah but in Idaho as well. The bar of the statute of limitations then *began* to run against the *unmatured* installments and *continued* to run against *past due install-ments,* so it made no difference whether installments were then past due or not yet matured, as far as the statute of limitations was concerned in the foreclosure case.

■ Apparently the trial court concluded that, although the loan company had elected, in its foreclosure suit, to declare all the installments due, nevertheless, they should be considered in relation to the statute of limitations as separate causes of action in the suit in Idaho to recover a personal judgment for balance due on the entire obligation. Such conclusion was erroneous.

■ There is, however, another phase to the question of the bar of the statute of limitations which must not be overlooked. Finding No. 11 says: "That long prior to October 21, 1935, the defendants Kesler, who are named as parties defendant in the foreclosure action in the state of Utah, had removed to the county of Bingham, state of Idaho, where said defendants have since continuously main-tained their residence." That finding is followed by Con-clusion No. 2, "That on July 20, 1940, when this action was commenced", certain of the installments were "barred by the Idaho statute of limitations." While the court does not directly find that respondents have *resided in Idaho more than five years* immediately preceding the commencement of this action, the language of the finding and conclusion indi-cates and implies that evidence to that effect appeared. If the Keslers had been residents of Idaho continuously for a period of five years preceding the date of commence-ment of this action (July 20, 1940), the action was barred under the statute of this state (Sec. 5-216, I. C. A.), as construed by this court in *West v. Theis,* 15 Ida. 167, 96 P. 932, 17 L. R. A., N. S., 472, 128 Am. St. Rep. 58, 75 A. L. R., 212 n; Ann. Cas. 1912D, 471n; see also *Lincoln Mines Operating Co. v. Huron Holding Corp.,* 27 Fed. Supp. 720,

723; *Farthing v. Sams,* (Mo.) 247 S. W. 111, 113; *Van Deren v. Lory,* (Fla.) 100 So. 794, 795.

In the light of the *findings* and *conclusions* of the trial court and, in the absence of the proof made in the case, we must indulge every reasonable presumption in favor of the findings and conclusions reached by the trial court. Taking the latter view, it would appear that appellant was not entitled to judgment for any sum. However, since there is no appeal here by the respondents, they can not complain of error committed against them.

The judgment is affirmed. Costs awarded to respondents.

Holden, C.J., and Budge, Givens, and Dunlap, JJ., concur.