225 So.2d 784

**Ex parte New Finance, Ltd.**

**In re NEW FINANCE, LTD.**

**v.**

**Martha ELLIS.**

**6 Div. 729.**

Supreme Court of Alabama.

Aug. 7, 1969.

J. Vernon Patrick, Jr., Berkowitz, Lefkovits, Vann, Patrick & Smith, Birmingham, opposed.

Wingo, Bibb, Foster & Conwell, Birmingham, for petitioner.

HARWOOD, Justice.

The sole question presented on this review is:

Does Act No. 374 of the 1959 Regular Session of the Legislature of Alabama (Acts of Alabama, 1959, pp. 966–984) known as the Alabama Small Loan Act, prohibit a licensee under such Act from incorporating in a note evidencing a loan, a provision that the borrower will pay "all expenses of collecting this note, with or without suit, including a reasonable attorney's fee, paid to the lender's attorney."

In State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 So.2d 27, the late Chief Justice Gardner wrote in reference to an Act designed to suppress slot machines:

"We take judicial knowledge of conditions generally known of all men, that prevailed in this State prior to the passage of this act and evidently inspired the same."

We judicially know that prior to the Alabama Small Loan Act in 1959, the small loan operator went unrestrained by an effective statutory regulation. Those whose chief motivation was greed preyed upon the ignorant, the uninformed, and the necessitous.

For decades concerned citizens and organizations made strenuous but futile efforts to have enacted legislation looking toward elimination of this evil. For some years, it was one of the main projects of the Junior Bar Section of the Alabama Bar. The efforts of all of these interested combinations eventually came to fruition in the passage of the Small Loan Law.

The amounts of the loans made by the small loan operator is often small, $10.00, $20.00, $50.00, etc. An interest rate of 8% per annum would not be economically feasible when considered in the light of office expenses, bookkeeping, and collection costs, plus the fact that many of those seeking small loans are poor credit risks.

The thinking of those experts in the field of small loans has been that the interest rate on such loans should be sufficiently high to enable a lender to have a fair return on his operations, and at the same time effectively limit the charges permitted to be imposed by the lender. The increase in the permissible rate of interest should be sufficiently high to take care of the costs of the lender's operations, including the credit risks involved. For this quid, a quo of higher charges in the form of

full protection should be thrown around the borrower. See Euel Screws, Report of Committee on Small Loans Studies, Junior Bar Section, 20 Alabama Lawyer. It was the almost unanimous conclusion of virtually all of the studies made in this field through the years that the two factors above (interest rate, and borrower protection) could best be obtained by a realistic interest rate on small loans, and a strict and fixed limitation on all permissible charges additional to such higher interest.

The Alabama Small Loan Act may now be found in the Pocket Part of our Code of 1940, designated as Sections 277–300, Title 5.

Section 290(1) and (2), provides that the maximum rate of interest that may be contracted for by a duly licensed small loan operator is 3% per month on the unpaid balance not in excess of $200.00, and an interest rate of 2% per month on the unpaid balance in excess of $200.00.

On loans of $75.00 or less, a licensee is permitted, in lieu of the charges above mentioned, to make charges according to a formula set forth in the Act.

By Section 292, a licensee may accept as additional security on loans of $100.00 or more, insurance on the life of the borrower, the premium for which cannot exceed .75¢ per annum for each $100.00 of life insurance.

By Section 290(7), a licensee may also collect from the borrower the actual fees for recording or releasing any instrument securing the loan.

Thus, in addition to the interest charges permitted, the charges for insurance, and for recording fees, are the only additional charges we have found permitted in the Act.

The Court of Appeals based its opinion upon the pertinent portions of Section 290(8) of the Small Loan Act, set forth in the opinion of the Court of Appeals as follows:

"No further or other charges shall be directly or indirectly contracted for or received by any licensee, including insurance premiums of any kind, except those specifically authorized by this Act * * *. If any amount in excess of the charges permitted by this Act is charged, contracted for, or received, except as the result of an accidental and bona fide error or computation, the contract of loan shall be void and the licensee shall have no right to collect or receive any cash advanced, charges or recompense whatsoever; * * *. Any borrower may recover the full amount of principal and charges paid by him on any contract made in violation of this section, together with a reasonable attorney fee, * * *."

In brief on certiorari counsel for appellant insists that the opinion of the Court of Appeals is erroneous in that, (1) the Small Loan Law is penal in nature and should be strictly construed, and (2) to hold impermissible a provision for the payment of collection costs, including a reasonable attorney's fee to be paid to the lender's attorney, is contrary to the public policy of this State.

As to the first contention, it is true that some courts have termed penal small loan acts similar to ours.

On the other hand, the Supreme Court of Maryland has observed that:

"The whole trend of modern thought is that the reasonable adequate protection of the borrower can only be afforded by regulation. * * * It was to mitigate rather than eradicate the evils incident to the business (small loan) and to afford to the borrower the greatest practicable measure of protection that the act (Small Loan Act) was passed. It is therefore remedial in its nature, and should be construed liberally so as to effect its purpose." (Par. ours.) Liberty Finance Co. v. Catterton, 161 Md. 650, 158 A. 16.

Counsel for complainant complains that the opinion of the Court of Appeals "does not even purport to analyze the Act."

■ The Court of Appeals did set forth the pertinent provisions of the Act on which it based its conclusions. The language of these provisions is clear and unambiguous. It limits the charges that may be imposed by the licensee in language clearly expressing the intention of the Legislature to do just that. The clearly expressed intention of the Legislature must be given effect, and there is no room for construction. James v. Todd, 267 Ala. 495, 103 So.2d 19; State v. Bay Towing and Dredging Co., 264 Ala. 187, 85 So.2d 890. We cannot see therefore that it matters whether the Act be considered penal, or remedial.

As to the effect of public policy on the construction of the Act, it is certainly clear that it has been the policy of this State through its history to permit the costs of collection, including reasonable attorney's fees, to be contracted for, and such stipulation does not render the loan contract usurious. Stephenson v. Allison, 123 Ala. 439, 26 So. 290; Ex parte Bledsoe, 180 Ala. 586, 61 So. 813. In fact such charges were provided for in our Negotiable Instrument Law (See Sec. 5(1), Tit. 39, Code of Alabama 1940, and Sec. 3–106(1) (e), Act No. 549, Acts of Alabama 1965, effective 31 December 1966, known as Uniform Commercial Code, to be found at Title 7A, Michie's Recompiled Code of Alabama.

But the above rule relates to loan transactions within the influence of our regular usury laws permitting interest charges of 8 per cent.

By the Small Loan Act, our Legislature has provided that licensees qualifying under the Act may legally charge the much higher interest rates and fixed charges provided for in the Act. At the same time it clearly expressed its intent that loans made within the purview of the Small Loan Act could not be burdened directly or indirectly with any additional charges other than for insurance costs and record fees. If such additional charges were received, charged, *or contracted for*, the loan contract was void, and the borrower would be entitled to recover full amount of the principal and charges paid by him, together with a reasonable attorney's fee.

Thus as to loans made under the provisions of the Small Loan Act, the intent of the Legislature is also clear. Public policy as to this type of loan must be considered as fixed by the intent of the Legislature.

It is apparent to us that the Legislature in fixing the interest rates in the Small Loan Act intended that out of the abundance of the higher interest rate, the lender should pay collection costs just as other litigants are ordinarily required to do. See Lackawanna Thrift and Loan Corp. v. Kabatchneck, 145 Pa.Super. 52, 20 A.2d 903.

The language of the Act discloses a studied intent to make it strictly inclusive as to permissible charges to be assessed againt the borrower. If the purposes of the Act are to be fulfilled, it should not be eroded by indirection.

As noted by the Court of Appeals, the courts of our sister States are not in accord as to whether a provision for the payment of an attorney's fee vitiates the loan contract under the Small Loan Act of the particular State, in which some of the Acts contain language similar to the Alabama Acts.

■ Probably the numerical weight of authority, and in our opinion the sounder conclusion, rests with the view of those courts holding that the clear and unambiguous language of the Act in reference to additional permissible charges, necessarily dictates the conclusion that the inclusion of a provision for payment of attorney's fees in case of default is prohibited by the explicit terms of the Act. We so hold in reference to the Alabama Small Loan Act.

Writ denied.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.