I agree that the case is due to be reversed and remanded. I would, however, reach this result in a different manner.
The Court of Civil Appeals has consistently treated a Truth-in-Lending claim as a set-off. See, Hewlett v. John BlueEmployees Federal Credit Union, 344 So.2d 505 *Page 1045 
(Ala.Civ.App. 1976); Hagler v. Ford Motor Credit Co.,367 So.2d 468 (Ala.Civ.App. 1978); Darrow v. Beneficial Finance Co.,370 So.2d 1001 (Ala.Civ.App. 1979). The approach taken by the majority would require an overruling of all three of these cases. The majority opinion states that this Court "has since recognized that a Truth-in-Lending counterclaim is in the nature of a recoupment — i.e., a compulsory counterclaim," citing Brooks v. Peoples National Bank of Huntsville,414 So.2d 917 (Ala. 1982).
In fact, Brooks did not deal with a Truth-in-Lending claim at all. Rather, it was an action for fraud in the inducement of the execution of a note and mortgage, and a counterclaim for default on the note. The statement made in Brooks concerning Truth-in-Lending counterclaims was purely dictum and does not control the case before us.
In 1980 Congress passed the Truth-in-Lending Simplification and Reform Act. This Act indicated that these claims might be considered as matters either of recoupment or of set-off and that this determination should be controlled by state law:
 "This subsection does not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by state law."
Pub.L. No. 96-221, § 615 (a)(4)(e) (March 31, 1980). In Alabama, we have treated these counterclaims as set-offs, and I see no reason for changing that approach. The rationale for this approach was clearly presented in Hewlett by the Court of Civil Appeals in the section quoted in the majority opinion.
I would hold that Fletcher's counterclaim is in the nature of a set-off or permissive counterclaim that may be brought within one year of the date of the Truth-in-Lending violation. Under Rule 13 (c) of the Alabama Rules of Civil Procedure, that counterclaim would relate back to the time the plaintiff's original claim arose.
The Court of Civil Appeals in Fletcher's case treated the claim as relating back to the date of acceleration, and thus considered it barred by the statute of limitations. I would hold that his claim relates back to the date of the initial default, at least as to the past due payments, thus allowing Fletcher to pursue his claim.
The Alabama Code provides, "All civil actions must be commenced after the cause of action has accrued within the period prescribed in this article and not afterwards, unless otherwise specifically provided for in this Code." Ala. Code §6-2-30 (1975). This court has stated, "The accrual of a cause of action occurs as soon as the party aggrieved is entitled to begin a prosecution thereon." Turner v. County Board ofEducation of Dale County, 360 So.2d 948, 950 (Ala. 1978). See also, Hunnicutt v. City of Tuscaloosa, 337 So.2d 346 (Ala. 1976). The plaintiff, then, is entitled to bring a claim when the defendant has breached the terms of the underlying contract. In the case before us, Willie Fletcher, the defendant, agreed to make 36 monthly payments. During the first year, only intermittent payments were received by the lender. Thus, during the first year the defendant was in default as to several of the installment payments due during that time. It follows then, that the plaintiff's cause of action accrued as to each of these installments when the defendant failed to make the payment on time.
The respondent successfully argued to the Court of Civil Appeals that the optional acceleration clause affected the running of the statute of limitations on the past due installments. I would reverse this holding. The general rule as to the relationship between an optional acceleration clause and the statute of limitations is stated as follows:
 "The American cases are agreed that, when the acceleration provision is optional with the holder of the note, the Statute of Limitations does not run until the note is due according to its terms, in the absence of an exercise of the option to *Page 1046 
declare it due upon the default; in other words, the default does not ipso facto start the running of the statute."
Annot., 34 A.L.R. 897 (1925).
While I recognize that this is the rule as to the amount accelerated, in my opinion, this does not affect the running of the statute of limitations on the past due installments.
 "It is generally agreed that when the acceleration provision is optional with the holder of the note, the statute of limitations does not run until the note is due according to its terms, in the absence of an exercise of the option to declare it due upon the default; in other words, the default does not ipso facto start the running of the statute as to the entire debt but only as to the installment or interest which is in default."
12 Am.Jur.2d, Bills Notes, § 1047 (emphasis added). This issue was confronted by this Court in Maynor v. Dillin,241 Ala. 362, 364, 2 So.2d 440, 442 (1941).
 "Since the option to accelerate payment was never exercised, the statute of limitations did not begin to run at the date of the note, nor at any later date, other than default on payment of installments. The statute began to run as to each installment, a distinct cause of action, at the date of maturity thereof."
This approach was made explicit in American Mutual Building Loan Co. v. Kesler, 64 Idaho 799, 137 P.2d 960 (1943). In that case the defendant failed to make installment payments and the mortgagee foreclosed under an optional acceleration provision. The court stated:
 "The bar of the statute of limitations then began to run against the unmatured installments and continued
to run against past due installments. . . ."
137 P.2d at 963.
As stated in respondent's brief, there is no evidence of any waiver of default on the past due installments. Further, the claim presented by Public Finance is for the entire unpaid balance and for the past due installments. Thus, I would hold that plaintiff's cause of action accrued, as to the past due installments, when Fletcher first failed to make a scheduled payment. Thus, the defendant's counterclaim relates back to the first default, which occurred during the one-year period immediately following the initiation of the credit agreement, and is therefore not barred by the statute of limitations. Therefore, I would hold that Fletcher is entitled to bring his Truth-in-Lending counterclaim, and, would reverse and remand this case to the Court of Civil Appeals.
BEATTY, J., concurs.